**IN THE UNITED STATE DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| PLANTABIS DISPENSARY, LLC | |
| Plaintiff, | **Civil Action:** |
| v. | |
| UNITED FOOD COMMERCIAL WORKERS, LOCAL 360, | |
| Defendant. | |

**PLAINTIFF'S BRIEF IN SUPPORT OF
ORDER TO SHOW CAUSE AND MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION STAYING AND/OR ENJOINING
ARBITRATION**

ARCHER & GREINER
A Professional Corporation
1025 Laurel Oak Road
Voorhees, NJ 08043
(856) 795-2121 (tel)
(856) 673-7132 (fax)
ddiaz@archerlaw.com

By:   Douglas Diaz, Esquire
      Scott A. Sears, Esquire

*Attorneys for Plaintiff,*
*Plantabis Dispensary, LLC*

## TABLE OF CONTENTS

**PAGE**

INTRODUCTION ................................................................................................................................1

STATEMENT OF FACTS ................................................................................................................3

LEGAL ARGUMENT.........................................................................................................................4

I.   STANDARDS FOR INJUNCTIVE RELIEF AND STAYING OR ENJOYING AN
     ARBITRATION. ....................................................................................................................4

II.  THE COURT SHOULD ISSUE A PRELIMINARY INJUNCTION TO STAY OR
     ENJOIN THE ARBITRATION.............................................................................................5

  A.     Plantabis Will Likely Prevail on Its Claim That the LPA Is Invalid and
  Thus Unenforceable. .......................................................................................................6

  1.    The LPA Provision Violates Plantabis's First Amendment Rights of Free
  Speech…………………………………………………………………………………..  6

  2.    The LPA Provision Discriminates Against Plantabis Based Upon Its Relationship to
  Labor Organizing in Violation of the Fourteenth Amendment Equal Protection Clause…… 8

  3.    The LPA Provision Deprives Plantabis the Right to Contract in Violation of the Contract
  Clause of the Constitution…………………………………………………………… …9

  4. The LPA Provision is Void for Vagueness in Violation of the Fourteenth Amendment…10

  5.    The LPA Provision Violates Plantabis's Seventh Amendment Right to a Jury Trial…...11

  6.    The LPA Provision is Preempted by the
  NLRA…………………………………….................................................................................12

  7.    The LPA is Void Ab Initio Since It Was Compelled By Duress Based on An
  Unconstitutional State Law…………………………………………………………....15

  B.     Plantabis Has Suffered and/or Will Suffer Irreparable Harm.....................................16

  1.    Plantabis Has Suffered and/or Will Suffer Irreparable Harm Based on Deprivation of
  Fundamental Constitutional Rights…………………………………………………… .16

  2.    Plantabis Will Also Suffer Irreparable Harm if Forced to Arbitrate a Claim It Did Not
  Agree to Arbitrate…………………………………………………………………………… 16

C.      The Balance of Equities Favors Granting a Preliminary Injunction............................17

D.      The Relief Requested Serves the Public Interest. .......................................................17

III. THE COURT SHOULD NOT REQUIRE PLANTABIS TO POST A BOND AS A
CONDITION TO ISSUE A PRELIMINARY INJUNCTION TO STAY OR ENJOIN
THE ARBITRATION...........................................................................................................18

CONCLUSION...........................................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

## Federal Cases

*Aetna Ins. Co. v. Kennedy to Use of Bogash,*
  *301 U.S. 389 (1937)*................................................................................................................*11*

*American Telephone & Telegraph, Co. v. Winback and Conserve Program, Inc.,*
  *42 F.3d 1421 (3d Cir. 1995)*....................................................................................................*17*

*Americans for Prosperity Found. v. Bonta,*
  *594 U.S. 595 (2021)*..................................................................................................................*6*

*Armour v. City of Indianapolis, Ind.,*
  *566 U.S. 673 (2012)*..................................................................................................................*8*

*Associated Builders & Contractors E. Pennsylvania Chapter Inc v. Cnty. of*
*Northampton,*
  *808 F. App'x 86 (3d Cir. 2020)*.................................................................................................*8*

*Associated Builders & Contractors, Inc. v. City of Jersey City, New Jersey,*
  *2017 WL 5951582 (D.N.J. 2017)*...............................................................................................*6*

*Baloga v. Pittston Area Sch. Dist.,*
  *927 F.3d 742 (3d Cir. 2019)*......................................................................................................*6*

*Belknap, Inc. v. Hale,*
  *463 U.S. 491 (1983)*................................................................................................................*13*

*Broadrick v. Oklahoma,*
  *413 U.S. 601 (1973)*................................................................................................................*10*

*Casala, LLC v. Kotek,*
  *789 F. Supp. 3d 1025 (D. Or. 2025)*...........................................................................*7, 14, 15*

*Chamber of Com. of U.S. v. Brown,*
  *554 U.S. 60 (2008)*...........................................................................................................*13, 14*

*Elliott v. Kiesewetter,*
  *98 F.3d 47 (3d Cir. 1996)*........................................................................................................*18*

*Elrod v. Burns,*
  *427 U.S. 347 (1976)*................................................................................................................*16*

*FDRLST Media, LLC v. Nat'l Lab. Rels. Bd.,*
  *35 F.4th 108 (3d Cir. 2022)*....................................................................................................*6, 7*

*Fedway Assocs., Inc. v. Wine, Liquor & Distillery Workers' Union Loc. 1-D, UCFW,*
  *2022 WL 4536278 (D.N.J. 2022)* ............................................................................................... *16*

*Giaccio v. State of Pa.,*
  *382 U.S. 399 (1966)* .................................................................................................................. *10*

*Golden State Transit Corp. v. City of Los Angeles,*
  *475 U.S. 608 (1986)* ........................................................................................................... *13, 14*

*Hornstine v. Township of Moorestown,*
  *263 F. Supp. 2d 887 (D.N.J. 2003)* .......................................................................................... *16*

*Hotel Emps. & Rest. Emps. Union, Loc. 57 v. Sage Hosp. Res., LLC,*
  *390 F.3d 206 (3d Cir. 2004)* ................................................................................................. *6, 14*

*Int'l Longshoremen's Ass'n, AFL-CIO v. Davis,*
  *476 U.S. 380 (1986)* .................................................................................................................. *13*

*Interpipe Contracting, Inc. v. Becerra,*
  *898 F.3d 879 (9th Cir. 2018)* ..................................................................................................... *13*

*Kirleis v. Dickie, McCamey & Chilcote, P.C.,*
  *560 F.3d 156,160 (3d Cir. 2009)* ................................................................................................ *5*

*LCN Enterprises, Inc. v. City of Asbury Park,*
  *197 F. Supp. 2d 141 (D.N.J. 2002)* .......................................................................................... *16*

*Leer Elec., Inc. v. Pennsylvania, Dep't of Lab. & Indus.,*
  *597 F. Supp. 2d 470 (M.D. Pa. 2009)* ........................................................................................ *8*

*Levy Grp., Inc. v. Land, Air, Sea & Rail Logistics, LLC,*
  *2022 WL 1101577 (3d Cir. 2022)* .............................................................................................. *15*

*Lodge 76, Int'l Ass'n of Machinists & Aerospace Workers v. Wis. Emp't Relations Comm'n,*
  *427 U.S. 132 (1976)* ...................................................................................................... *13, 14, 15*

*Maldonado v. Houston,*
  *157 F.3d 179 (3d Cir. 1998)* ............................................................................................... *4, 5, 6*

*Marsellis-Warner Corp. v. Rabens,*
  *51 F. Supp. 2d 508 (D.N.J. 1999)* ............................................................................................. *17*

*N. L. R. B. v. Gissel Packing Co.,*
  *395 U.S. 575 (1969)* ........................................................................................................... *6, 7, 13*

*Nebbia v. People of New York,*
   *291 U.S. 502 (1934)*.....................................................................................................*9*

*Neo Gen Screening, Inc. v. Telechem Int'l, Inc.,*
   *69 Fed. Appx. 550 (3d Cir. 2003)*...............................................................................*5*

*New Skies Satellites, B.V. v. Home2US Commc'ns, Inc.,*
   *9 F. Supp. 3d 459 (D.N.J. 2014)*.................................................................................*11*

*PaineWebber Inc. v. Hartmann,*
   *921 F.2d 507 (3d Cir. 1990)*........................................................................................*17*

*Recchia v. Kellogg Co.,*
   *951 F. Supp. 2d 676 (D.N.J. 2013)*.............................................................................*15*

*San Diego Building Trades Council v. Garmon,*
   *359 U.S. 236 (1959)*........................................................................................*12, 13, 14*

*Smith v. Goguen,*
   *415 U.S. 566 (1974)*.....................................................................................................*10*

*Susquehanna Valley Alliance v. Three Mile Island Nuclear Reactor,*
   *619 F.2d 231 (3d Cir. 1980)*........................................................................................*16*

*Temple Univ. v. White,*
   *941 F.2d 201 (3d Cir. 1991)*........................................................................................*18*

*Thomas Global Group, LLC v. Watkins,*
   *2014 WL 1371719 (D.N.J. 2014)*..................................................................................*5*

*Tracinda Corp. v. DaimlerChrysler AG,*
   *502 F.3d 212 (3d Cir. 2007)*........................................................................................*11*

*Transp. Workers Union of Am., Loc. 290 By & Through Fabio v. Se.*
   *Pennsylvania Transp. Auth.,*
   *145 F.3d 619 (3d Cir. 1998)*..........................................................................................*9*

*Twin City Pipe Line Co. v. Harding Glass Co.,*
   *283 U.S. 353 (1931)*.......................................................................................................*9*

*University of Tex. v. Camenisch,*
   *451 U.S. 390 (1981)*.......................................................................................................*6*

**State Cases**

*Quigley v. KPMG Peat Marwick, LLP,*
   *330 N.J. Super. 252 (App. Div. 2000)*.........................................................................*15*

## Federal Statutes

29 U.S.C.A. § 158(c) ................................................................................................................12

29 U.S.C. § 157..........................................................................................................................12

29 U.S.C. §§ 157, 158.........................................................................................................12, 14

National Labor Relations Act .......................................................................................................1

NLRA....................................................................................................................................*passim*

NLRA § 7.............................................................................................................................12, 14

NLRA § 8.............................................................................................................................12, 14

NLRA § 8(c) ................................................................................................................................3

## State Statutes

*N.J.S.A. 24:6I-36.f*.......................................................................................................................9

New Jersey Cannabis Regulatory, Enforcement Assistance, and Marketplace
    Modernization Act ...................................................................................................................1

## Rules

Fed. R. Civ. P. 65(c) .................................................................................................................18

## Regulations

N.J.A.C. 17:30-6.7(a)...................................................................................................................9

N.J.A.C. 17:30-9.4(g)1 ................................................................................................................9

## INTRODUCTION

Plaintiff Plantabis Dispensary, LLC ("Plantabis") seeks an order preliminarily staying and/or enjoining an arbitration sought by Defendant United Food Commercial Workers, Local 360 (the "Union") because it is the product of an agreement that is invalid and thus unenforceable. Plantabis was coerced to enter into the agreement, a Labor Peace Agreement with the Union (the "LPA"), based upon a New Jersey law that is unconstitutional. Therefore, the LPA and its arbitration provision are void *ab initio*.

The New Jersey Cannabis Regulatory, Enforcement Assistance, and Marketplace Modernization Act (NJ CREAMMA) requires businesses to enter into a labor peace agreement in order to obtain and maintain a cannabis license (the "LPA Provision"). "Labor peace agreement" is not defined under the law and failure to sign a labor peace agreement with an approved union exposes companies to license suspension, revocation, and/or substantial monetary penalties. The unions recognize this, providing them with enormous bargaining power and the ability to maintain a take it or leave it approach when presenting labor peace agreements with businesses seeking a cannabis license.

As such, the LPA Provision is unconstitutional on its face. In practice, the LPA Provision prohibits speech in violation of the First Amendment by requiring companies to remain "neutral" with respect to union organizing. It also discriminates against businesses based upon their relationship to labor organizing in violation of the Fourteenth Amendment, deprives businesses the right to contract in violation of the Contract Clause, is void for vagueness in violation of the Fourteenth Amendment, and deprives businesses the right to a jury trial in violation of the Seventh Amendment. The LPA Provision is also preempted by the National Labor Relations Act ("NLRA") since it seeks to regulate activity protected and/or prohibited by the NLRA and activity intentionally left unregulated by Congress.

1

The LPA at issue here, which Plantabis was compelled to enter based on New Jersey law, expressly prevents Plantabis from expressing its views about unionization and requires arbitration of disputes.  The Union has sought to invoke the LPA's arbitration provision with respect to the termination of several employees, which it claims violated the LPA.  However, Plantabis only entered into the LPA to comply with the unconstitutional LPA Provision. Were it not for the LPA Provision, Plantabis would not have entered into the LPA and its arbitration provision. Since the LPA provision is unconstitutional, the LPA between the parties is unenforceable. Thus, the Union cannot compel Plantabis to engage in arbitration because it is not the product of a valid agreement, which is a threshold showing before a party can be compelled to arbitration.  Notwithstanding that these objections were presented to the arbitrator, arbitration is scheduled for December 17, 2025, and the arbitrator intends on moving forward with the arbitration on that date.

For these reasons, and as set forth in more detail below, Plantabis moves the Court to enjoin, or at least stay, the arbitration. There is no enforceable agreement to arbitrate between the parties, and injunctive relief is necessary to prevent irreparable harm resulting from the deprivation of Plantabis's Constitutional rights and participating in an arbitration to which it did not willingly consent.

## STATEMENT OF FACTS

The following facts are drawn from the Complaint and the documents referenced therein, which materials are attached as exhibits to the Declaration of Douglas Diaz, Esq. ("Diaz Dec.").

Plantabis is a New Jersey limited liability company that operates a cannabis business and maintains its principal place of business in Rahway, New Jersey. See Diaz Dec. at Exhibit A, ¶ 9. In order to obtain a license from New Jersey, Plantabis had no choice but to sign a labor peace agreement with the Union, and it did so on or about April 6, 2023. Id. at ¶ 22. In order to renew its license with New Jersey, Plantabis was again required to sign a labor peace agreement with the Union and in order to comply, it did so on or about April 3, 2025. Id. at ¶ 23.

Due to its uneven bargaining power and New Jersey law in the form of the LPA Provision, the Union required Plantabis to accept terms in its labor peace agreement limiting Plantabis's First Amendment right to free speech and Section 8(c) of the NLRA, such as that Plantabis:

> agrees to take *a neutral approach* to unionization of eligible employees, meaning that the Company … *will neither help nor hinder the Union's organizing effort, including making any statement or taking any action that directly or indirectly indicates or implies any opposition to workers selecting the Union as their collective bargaining representative*, or directly or indirectly supporting or assisting in any way any person or group who may oppose the Union. This includes the Company *refraining from making negative comments or otherwise demeaning by word or action the Union's organization of the Company's eligible employees, Union representatives, or unionization.* …
>
> At the Union's request, the Company will conduct a meeting on a mutually agreeable date(s) and time(s) with all of the bargaining unit employees, during which *the Company will tell the employees that it is neutral, does not object to their talking to and supporting the Union or not talking to and supporting the Union...*

Id. at ¶ 24; LPA attached to Exhibit A as Exhibit 1 (emphasis added).

3

The LPA also requires Plantabis to submit disputes to binding arbitration, waiving Plantabis's right to a jury trial. Id. at ¶ 25. Plantabis did not acquiesce to any of these terms, but rather was mandated by law to accept them and execute the LPA in order to comply with the LPA Provision to both obtain and  maintain a license and avoid financial penalties. Id. at ¶ 26.

On or about September 17, 2024, the Union advised Plantabis that it was successful in organizing its employees and that the employees had chosen to join the Union. Id. at ¶ 27. Pursuant to the LPA, Plantabis thereafter recognized the Union as the representative of the employees. Id. at ¶ 28.

In or about April or May of 2025, Plantabis discovered facts which it believed demonstrated that several employees had stolen company products and Plantabis subsequently terminated the employees. Id. at ¶ 31. On or about May 30, 2025, the Union objected to the terminations, claiming they violated the LPA, and sought to arbitrate the issue pursuant to the LPA with the American Arbitration Association. Id. at ¶ 32. The arbitrator scheduled the arbitration for December 17, 2025.  Id. at ¶ 33. Plantabis objected to the arbitration in part because the New Jersey law requiring the LPA is unconstitutional. Id. at ¶ 34. The arbitrator nonetheless advised that she intends to move forward with the arbitration on December 17, 2025. Id. at ¶ 35.

## LEGAL ARGUMENT

### I.    STANDARDS FOR INJUNCTIVE RELIEF AND STAYING OR ENJOINING AN ARBITRATION.

In determining whether to grant a preliminary injunction, the Court examines whether: "(1) the plaintiff is likely to succeed on the merits; (2) denial will result in irreparable harm to the plaintiff; (3) granting the injunction will not result in irreparable harm to the defendant; and (4) granting the injunction is in the public interest." Maldonado v. Houston, 157 F.3d 179, 184 (3d

4

Cir. 1998).  The Court must engage in a "weighing" of these factors. Id.  Thus, and as the Third Circuit has instructed, the moving party does not need to prevail on all four of these factors, but must only show the "overall need for an injunction."  Neo Gen Screening, Inc. v. Telechem Int'l, Inc., 69 Fed. Appx. 550, 554 (3d Cir. 2003).

When a party seeks to "halt or stay" an arbitration, "extensive analysis is unnecessary" because "[i]t is well established that a court is 'obliged to enjoin an arbitration' where it is determined 'that a valid arbitration agreement does not exist or that the matter at issue clearly falls outside the substantive scope of the agreement….'" Thomas Global Group, LLC v. Watkins, 2014 WL 1371719, at *4 (D.N.J. 2014) (quoting PaineWebber Inc. v. Hartmann, 921 F.2d 507, 511 (3d Cir. 1990)), abrogated on other grounds by Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79 (2002).  Indeed, as the Third Circuit has held in the context of whether arbitration is required or not, "a court must determine that (1) a valid agreement to arbitrate exists… [and] th[e] presumption in favor of arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties." Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d 156,160 (3d Cir. 2009) (internal quotations and citations omitted).

## II.  THE COURT SHOULD ISSUE A PRELIMINARY INJUNCTION TO STAY OR ENJOIN THE ARBITRATION.

As more thoroughly explained below, Plantabis satisfies each of the requirements for injunctive relief and has otherwise shown that the LPA is not a valid agreement.  Specifically, Plantabis will likely prevail on its claim that the LPA is invalid based on the constitutional infirmities and thus unenforceable; that irreparable harm will occur without the issuance of an injunction; and that the balance of the hardships and the public interest favor injunctive relief.

### A.    Plantabis Will Likely Prevail on Its Claim That the LPA Is Invalid and Thus Unenforceable.

The first factor for injunctive relief does not require a party to "prove its case in full." University of Tex. v. Camenisch, 451 U.S. 390, 395 (1981), but rather that it is "likely to succeed on the merits." Maldonado, 157 F.3d at 184. Here, the facts and law show that Plantabis is likely to prevail on its claims that the LPA is invalid based on constitutional grounds, preemption, and duress or lack of consent. And when an agreement is the product of an invalid law, that agreement becomes void.  See, e.g. Hotel Emps. & Rest. Emps. Union, Loc. 57 v. Sage Hosp. Res., LLC, 390 F.3d 206, 211 (3d Cir. 2004) (noting that if a labor peace agreement is only entered into because of a state law that is preempted by federal labor law, "the executed agreement between the parties may be deemed void); Associated Builders & Contractors, Inc. v. City of Jersey City, New Jersey, 2017 WL 5951582 (D.N.J. 2017) (holding that because a city ordinance requiring a Project Labor Agreement was unconstitutional, the agreements for uncompleted projects were unenforceable).

### 1.    The LPA Provision Violates Plantabis's First Amendment Rights of Free Speech.

The First Amendment to the Constitution prohibits restrictions on freedom of speech. U.S. Const. amend. I. A restriction on free speech violates the First Amendment "even if [it does so] indirectly." Americans for Prosperity Found. v. Bonta, 594 U.S. 595, 609 (2021). As such, "an employer is free to communicate to his employees any of his general views about unionism or any of his specific views about a particular union." N. L. R. B. v. Gissel Packing Co., 395 U.S. 575, 618 (1969). See also Baloga v. Pittston Area Sch. Dist., 927 F.3d 742, 762 (3d Cir. 2019) (same). Said differently, "An employer is not barred from communicating his views on unions—even his anti-union views—to his employees, but he cannot threaten employees with reprisals or promise them benefits in relation to unionization." FDRLST Media, LLC v. Nat'l

Lab. Rels. Bd., 35 F.4th 108, 122 (3d Cir. 2022). The only limitation is that the communications from the employer cannot contain a "threat of reprisal or force or promise of benefit." Gissel Packing Co., 395 U.S. 575, 618. See also FDRLST Media, LLC., 35 F.4th at 126 ("only statements that constitute a true threat to an employee's exercise of her labor rights are prohibited").

In this case, the LPA Provision, by compelling Plantabis to enter into the LPA, deprives Plantabis of its constitutional freedom to communicate with its employees. The LPA prohibits Plantabis from disfavored labor-related communications thereby compelling Plantabis's silence and chilling protected expression. The LPA expressly provides that Plantabis must take "*a neutral approach to unionization of eligible employees, meaning that the Company … will neither help nor hinder the Union's organizing effort, including making any statement or taking any action that directly or indirectly indicates or implies any opposition to workers selecting the Union as their collective bargaining representative….*" It further provides that Plantabis must "*refrain[  ] from making negative comments or otherwise demeaning by word or action the Union's organization of the Company's eligible employees, Union representatives, or unionization.*" See Diaz Dec. at Exhibit A, Exhibit 1. Therefore, the LPA Provision is invalid since it violates Plantabis's Free Speech rights. See Casala, LLC v. Kotek, 789 F. Supp. 3d 1025, 1042 (D. Or. 2025) (holding that a state law requiring employers to "remain neutral with respect to a bona fide labor organization's representatives communicating with the employees of the applicant or the license about the rights afforded to such employees" violated employers' First Amendment rights to free speech because it "prohibits all speech by employers that is not 'neutral' toward unionization.").

2.       *The LPA Provision Discriminates Against Plantabis Based Upon Its Relationship to Labor Organizing in Violation of the Fourteenth Amendment Equal Protection Clause.*

The Fourteenth Amendment states that "[n]o State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States … nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. To comply with the Equal Protection Clause that distinguishes based upon union status, there must be "a rational relationship between the disparity of treatment and some legitimate governmental purpose." Armour v. City of Indianapolis, Ind., 566 U.S. 673, 680 (2012). For instance, in Associated Builders & Contractors E. Pennsylvania Chapter Inc v. Cnty. of Northampton, 808 F. App'x 86 (3d Cir. 2020), the plaintiff alleged that a municipality's ordinance violated the Fourteenth Amendment's Equal Protection Clause by discriminating against non-union contractors in favor of union contractors without a rational basis. The Third Circuit affirmed dismissal of the plaintiffs claim, but only because the municipality had a rational basis for discriminating against non-union contractors. Id. at 90. Similarly, in Leer Elec., Inc. v. Pennsylvania, Dep't of Lab. & Indus., 597 F. Supp. 2d 470 (M.D. Pa. 2009), the court denied the Pennsylvania Department of Labor's motion to dismiss the plaintiff's claim that non-union contractors were treated differently than other similarly situated unionized contractors in violation of the Fourteenth Amendment.

Here as well, the LPA Provision requires Plantabis to enter into a labor peace agreement to obtain and maintain a cannabis license. There is no rational relationship that justifies distinguishing between cannabis employers and non-cannabis employers and especially with respect to requiring labor peace agreements. The employees at either employer already have labor protections and rights set forth under federal law, namely, the NLRA. Moreover, the New

Jersey law excludes "microbusinesses"[1] from the labor peace agreement requirement. N.J.A.C. 17:30-9.4(g)1. This further shows the irrationality of the requirement. As such, the LPA Provision is invalid since it violates the Equal Protection clause of the Fourteenth Amendment.

### 3.      *The LPA Provision Deprives Plantabis the Right to Contract in Violation of the Contract Clause of the Constitution.*

The Contract Clause of the Constitution provides, in relevant part, that "[n]o state shall enter into any ... Law impairing the Obligation of Contracts." U.S. Const. art. I, § 10. Contracts entered into between private parties "are normally matters of private and not of public concern", and therefore "[t]he general rule is that both shall be free of governmental interference." Nebbia v. People of New York, 291 U.S. 502, 523 (1934). As such, "competent persons shall have the utmost liberty of contracting." Twin City Pipe Line Co. v. Harding Glass Co., 283 U.S. 353, 356 (1931).

The purpose of the Contract Clause is to "protect the legitimate expectations that arise from such contractual relationships from unreasonable legislative interference." Transp. Workers Union of Am., Loc. 290 By & Through Fabio v. Se. Pennsylvania Transp. Auth., 145 F.3d 619, 622 (3d Cir. 1998). Courts must analyze the following when evaluating a claim arising under the Contract Clause: (1) whether there is a contractual relationship; (2) whether a change in a law has impaired that contractual relationship; and (3) whether the impairment is substantial. Id. at 621. If a law substantially impairs a contractual relationship, "the court must further inquire whether the law at issue has a legitimate and important public purpose and whether the adjustment of the rights of the parties to the contractual relationship was reasonable and appropriate in light of that purpose." Id.

---

[1] A "microbusiness" is defined as "a license applicant's or license holder's cannabis business that [h]as a smaller footprint than a standard cannabis business, with respect to its business operations, capacity, and quantity of product, pursuant to N.J.S.A. 24:6I-36.f and this section." N.J.A.C. 17:30-6.7(a).

Here, the LPA Provision impaired Plantabis's contractual relationship with the Union *by compelling* Plantabis to enter into the LPA. As a result, it also removes or limits any bargaining power for companies subject to the law. Unions know that companies such as Plantabis are legally required to enter into a labor peace agreement, thereby leaving Plantabis at the mercy of what a union presents as the labor peace agreement, with no choice but to sign or risk the penalties under the New Jersey law. There is no legitimate and important public purpose that justifies eliminating Plantabis's fundamental contractual rights. As such, the LPA Provision is invalid since it violates the Contract Clause of the Constitution.

### 4.        *The LPA Provision is Void for Vagueness in Violation of the Fourteenth Amendment.*

The Due Process Clause of the Fourteenth Amendment of the Constitution prohibits laws "so vague and standardless that it leaves the public uncertain as to the conduct it prohibits or leaves judges and jurors free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case." Giaccio v. State of Pa., 382 U.S. 399, 402–03 (1966). A statute is unconstitutionally vague when "men of common intelligence must necessarily guess at its meaning." Broadrick v. Oklahoma, 413 U.S. 601, 607 (1973). Moreover, greater specificity and clarity is required when constitutional rights are at issue. See Smith v. Goguen, 415 U.S. 566, 573 (1974) (holding that when a law "is capable of reaching expression sheltered by the First Amendment, the [due process void for vagueness] doctrine demands a greater degree of specificity than in other contexts").

Here, the LPA Provision, which implicates constitutional rights including those under the First Amendment, does not remotely satisfy the heightened standards of the void for vagueness doctrine. The law is impermissibly vague because the LPA does not define "labor peace agreement." The LPA Provision is thus subject to a broad interpretation and could include any

10

terms demanded by any union, whether reasonable or unreasonable, and which is not consistent with the law, including the United States Constitution and NLRA. The provision lacks any specificity whatsoever and there is no fair notice of its meaning. It thereby encourages differential and discriminatory enforcement because any term could be considered part of a labor peace agreement, as determined solely by a union. Therefore, the LPA Provision is unconstitutionally vague, in violation of the Due Process Clause.

### 5. *The LPA Provision Violates Plantabis's Seventh Amendment Right to a Jury Trial.*

For these same reasons that the LPA Provision violates the Contract Clause of the Constitution, the LPA Provision, by compelling Plantabis to enter into the LPA and arbitrate claims thereunder, deprives Plantabis the right to a jury trial in violation of the Seventh Amendment. "The right to a jury trial in a civil case is a fundamental right expressly protected by the Seventh Amendment to the United States Constitution." Tracinda Corp. v. DaimlerChrysler AG, 502 F.3d 212, 222 (3d Cir. 2007). Accordingly, "courts indulge every reasonable presumption against waiver." Aetna Ins. Co. v. Kennedy to Use of Bogash, 301 U.S. 389, 393 (1937).

A jury waiver clause in a contract may be valid if "(1) there was no gross disparity in bargaining power between the parties, (2) the parties are sophisticated business entities, (3) the parties had an opportunity to negotiate the contract terms, and (4) the waiver provision was conspicuous." New Skies Satellites, B.V. v. Home2US Commc'ns, Inc., 9 F. Supp. 3d 459, 472–73 (D.N.J. 2014).

Since the Union was one of the only labor organizations Plantabis could negotiate with to obtain and maintain its cannabis license, and because the LPA Provision mandates that Plantabis enter into a labor peace agreement, which it does not define, there was a gross disparity in

bargaining power between the parties and Plantabis had no serious opportunity to negotiate the contract terms.  There is also no express waiver provision in the LPA, let alone a conspicuous waiver. Therefore, the LPA Provision is invalid since it violates Plantabis's right to a jury trial.

### 6.        The LPA Provision is Preempted by the NLRA.

Section 7 of the NLRA protects the right of employees "to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157.  Section 8 of the NLRA protects the rights of employers to express "any views, argument, or opinion." 29 U.S.C.A. § 158(c). Section 8 of the NLRA also provides that it is an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7." 29 U.S.C. §§157, 158.

The NLRA preemption doctrine, announced by the United States Supreme Court in San Diego Building Trades Council v. Garmon, 359 U.S. 236 (1959), states that the NLRA preempts state law "[w]hen it is clear or may be fairly assumed that the activities that a State purports to regulate are protected by §7 of the [NLRA]. Id. at 244. Known as "Garmon preemption", this preemption doctrine prohibits regulation of activities that the NLRA not only protects or prohibits but also those that it "arguably" protects or prohibits. Id. at 245. As such, even when an activity is "arguably" subject to § 7 or § 8 of the NLRA, "the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted. Id. "The governing consideration is that to allow the States to control activities that are potentially subject to federal regulation involves too great a danger of conflict with national labor policy" and the "exclusive federal regulatory scheme." Id. at 246-47.

To establish <u>Garmon</u> preemption, a plaintiff must show that "there is an arguable case for pre-emption." <u>Int'l Longshoremen's Ass'n, AFL-CIO v. Davis</u>, 476 U.S. 380, 397 (1986). All a plaintiff must do is "advance an interpretation of the [NLRA] that is not plainly contrary to its language and that has not been 'authoritatively rejected' by the courts or the Board." <u>Id.</u> at 394-395. A plaintiff must "put forth enough evidence to enable the court to find that the Board reasonably could uphold a claim based on such an interpretation." <u>Id.</u> at 395.

Following the Supreme Court holding in <u>Lodge 76, Int'l Ass'n of Machinists & Aerospace Workers v. Wis. Emp't Relations Comm'n</u>, 427 U.S. 132 (1976), the NLRA also preempts state and local laws that strip employers or employees of certain "self-help" economic tools like strikes and lockouts. <u>Id.</u> at 148–51. "<u>Machinists</u> preemption" "proscribes state regulation and state-law causes of action concerning conduct that Congress intended to be unregulated, conduct that was to remain a part of the self-help remedies left to the combatants in labor disputes." <u>Belknap, Inc. v. Hale</u>, 463 U.S. 491, 499 (1983). Therefore, "[a] local government … lacks the authority to introduce some standard of properly 'balanced' bargaining power or to define what economic sanctions might be permitted negotiating parties in an 'ideal' or 'balanced' state of collective bargaining." <u>Golden State Transit Corp. v. City of Los Angeles</u>, 475 U.S. 608, 619 (1986) (<u>citing</u> <u>Machinists</u>, <u>supra</u>, at 149-150). The <u>Machinists</u> preemption doctrine bars states from regulating non-coercive labor speech by an employer, employee, or an employee's union. <u>Interpipe Contracting, Inc. v. Becerra</u>, 898 F.3d 879, 887 (9th Cir. 2018) (<u>citing</u> <u>Metro. Life Ins. Co. v. Massachusetts</u>, 471 U.S. 724 (1985) and <u>Chamber of Com. of U.S. v. Brown</u>, 554 U.S. 60, 67–68 (2008). "[A]n employer's free speech right to communicate his views to his employees is firmly established and cannot be infringed." <u>N. L. R. B. v. Gissel Packing Co.</u>, 395 U.S. 575, 617 (1969).

Here, the LPA Provision is preempted by both the <u>Garmon</u> preemption and <u>Machinists</u> preemption doctrines. By compelling Plantabis to enter into the LPA, which prohibits Plantabis from disfavored labor-related communications, the LPA Provision violates Section 8 of the NLRA.  Plantabis could not negotiate this portion in the LPA because of the LPA Provision's limits on the bargaining units with which Plantabis could negotiate with to obtain a cannabis license. Therefore, <u>Garmon</u> preemption renders the LPA Provision invalid. <u>See</u> <u>Casala</u>, <u>supra</u>, 789 F. Supp. 3d at 1039 (finding state law subject to <u>Garmon</u> preemption since it impermissibly conditions a state cannabis license on an employer agreeing to remain neutral with respect to a bona fide labor organization's communications with the employees regarding their rights).

The Union is also apparently attempting to use the LPA to argue that Plantabis terminated employees because of their union activities. Such a claim arises directly under section 8 of the NLRA which provides that it is an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7." 29 U.S.C. §§157, 158.  It also serves as an end around of the NLRB which has jurisdiction to hear such claims. Thus, for this reason as well, <u>Garmon</u> preemption applies.

<u>Machinists</u> preemption also renders the LPA Provision invalid since limiting the comments Plantabis may make about the Union conflicts with Congress's intent to allow "uninhibited, robust, and wide-open debate in labor disputes." <u>Chamber of Com. of U.S. v. Brown</u>, 554 U.S. 60, 68 (2008). It also improperly conditions the ability to obtain and renew a cannabis license on entering into a labor peace agreement with a union. For instance, in <u>Golden State</u>, the Supreme Court held that "the city was pre-empted from conditioning Golden State's franchise renewal on the settlement of the labor dispute." <u>Id.</u> at 618. <u>See also</u> <u>Hotel Emps. & Rest. Emps. Union, Loc. 57 v. Sage Hosp. Res., LLC</u>, 390 F.3d 206, 210–11 (3d Cir. 2004) ("If

14

… private parties entered into a neutrality agreement because a city mandated it as a matter of law or regulation, there is no doubt that the question of federal preemption would be presented"). Here as well, the LPA Provision is preempted since it conditions Plantabis's cannabis license on entering into and maintaining a labor peace agreement. See Casala, supra, 789 F. Supp. 3d at 1041 (holding state statute conditioning cannabis license renewal on signing a labor peace agreement preempted under Machinists since it seeks to regulate the relationship between unions and employers, upsetting the balance Congress struck in passing the NLRA).

### 7. *The LPA is Void Ab Initio Since It Was Compelled By Duress Based on An Unconstitutional State Law.*

Since the LPA was only entered into because of the unconstitutional LPA Provision, the LPA is void *ab initio*, and the arbitration must be enjoined.

New Jersey law defines economic duress as: (1) being induced by wrongful or improper pressure, and (2) "having little choice but to accede." Levy Grp., Inc. v. Land, Air, Sea & Rail Logistics, LLC, 2022 WL 1101577, at *3 (3d Cir. 2022) (quoting Continental Bank of Pa. v. Barclay Riding Academy, 93 N.J. 153, 176 (1983)). The key factor in determining whether duress exists is "the wrongfulness of the pressure exerted." Recchia v. Kellogg Co., 951 F. Supp. 2d 676, 683 (D.N.J. 2013) (citing Continental Bank of Pa.). Duress also entails inadequate consideration. Quigley v. KPMG Peat Marwick, LLP, 330 N.J. Super. 252, 263 (App. Div. 2000).

In this case, it is clear that Plantabis only entered into the LPA because of the LPA Provision. The LPA Provision exerted extreme pressure on Plantabis since it required Plantabis to enter into the LPA to obtain and maintain its cannabis license. The LPA lacks adequate consideration since Plantabis was compelled to enter into, unwillingly, and with little or no

bargaining power. Therefore, the LPA must be deemed void because of the unconstitutional LPA Provision.

### B. Plantabis Has Suffered and/or Will Suffer Irreparable Harm.

#### 1. Plantabis Has Suffered and/or Will Suffer Irreparable Harm Based on Deprivation of Fundamental Constitutional Rights.

Irreparable harm, as required to obtain injunctive relief, is shown when money damages cannot adequately compensate plaintiff's injuries. Hornstine v. Township of Moorestown, 263 F. Supp. 2d 887 (D.N.J. 2003). Most relevant here, the Third Circuit has held that violation of constitutional rights constitutes irreparable harm. See Susquehanna Valley Alliance v. Three Mile Island Nuclear Reactor, 619 F.2d 231, 245 (3d Cir. 1980) ("The plaintiffs' present allegation of irreparable harm to their constitutional right to 'life and liberty' meets the irreparable harm standard"). See also LCN Enterprises, Inc. v. City of Asbury Park, 197 F. Supp. 2d 141, 153 (D.N.J. 2002) ("The deprivation of liberties protected by the First Amendment, however, typically constitutes irreparable injury"). Indeed, as the Supreme Court has stated: "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373 (1976).

Here, the Court must enjoin or stay the arbitration to prevent enforcement of the unconstitutional LPA Provision. Enforcing the LPA constitutes a violation of Plantabis's First, Seventh, and Fourteenth Amendment rights, as well as a violation of the Contract Clause and NLRA preemption.

#### 2. Plantabis Will Also Suffer Irreparable Harm if Forced to Arbitrate a Claim It Did Not Agree to Arbitrate.

"It is well-established that harm to a party would be irreparable if forced to arbitrate a claim one did not agreed to arbitrate." Fedway Assocs., Inc. v. Wine, Liquor & Distillery

Workers' Union Loc. 1-D, UCFW, 2022 WL 4536278, at *5 (D.N.J. 2022). This is based upon PaineWebber Inc. v. Hartmann, 921 F.2d 507 (3d Cir. 1990), overruled on other grounds by Howsam v. Dean Witter Reynolds, 537 U.S. 79, 85 (2002), which explained that "the harm to a party would be *per se* irreparable if a court were to abdicate its responsibility to determine the scope of an arbitrator's jurisdiction and, instead, were to compel the party, who has not agreed to do so, to submit to an arbitrator's own determination of his authority." Id. at 515.

In this case, the Union initiated arbitration based upon an invalid LPA, which Plantabis was mandated to enter into with the Union. Plantabis will be subject to irreparable harm if it is compelled to arbitration since it never agreed to arbitrate the subject claims.

### C.    The Balance of Equities Favors Granting a Preliminary Injunction.

The balance of equities favors enjoining or staying the arbitration. Plantabis will suffer irreparable harm if it is forced to arbitrate a claim based on the invalid LPA, which it was compelled to enter into by the unconstitutional LPA Provision.  Conversely, there is no hardship to the Union by enjoining or staying the arbitration.  As such, the balance of the hardships weighs in favor of Plantabis.

### D.    The Relief Requested Serves the Public Interest.

"Where a party demonstrates both the likelihood of success on the merits and irreparable injury, 'it almost always will be the case that the public interest will favor' the issuance of an injunction."  Marsellis-Warner Corp. v. Rabens, 51 F. Supp. 2d 508, 532–33 (D.N.J. 1999) (quoting American Telephone & Telegraph, Co. v. Winback and Conserve Program, Inc., 42 F.3d 1421, 1427 n.8 (3d Cir. 1995)).   Nothing in this case contravenes this general rule. Moreover, it is well within the public interest to protect a party's constitutional rights and ensure they are not diminished. Thus, because Plantabis has demonstrated a likelihood of success on the

merits and irreparable harm and this matter concerns an unconstitutional law, injunctive relieve would serve the public interest.

### III.    THE COURT SHOULD NOT REQUIRE PLANTABIS TO POST A BOND AS A CONDITION TO ISSUE A PRELIMINARY INJUNCTION TO STAY OR ENJOIN THE ARBITRATION.

Fed. R. Civ. P. 65(c) generally requires a party seeking an injunction to post a security bond "to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Notwithstanding, the Third Circuit recognizes that there are exceptions to the bond requirement. See Temple Univ. v. White, 941 F.2d 201, 220 (3d Cir. 1991). This exception "involves a balance of the equities of the potential hardships that each party would suffer as a result of a preliminary injunction." Elliott v. Kiesewetter, 98 F.3d 47, 60 (3d Cir. 1996).

In this case, the Union will not suffer any harm if the arbitration is stayed or enjoined. Furthermore, requiring Plantabis to post a bond as a condition to stay or enjoin the arbitration could subject Plantabis to a violation of Plantabis's constitutional rights and participation in an arbitration to which it did not consent. Therefore, the Court should waive the bond requirement.

### CONCLUSION

For the foregoing reasons, Plantabis respectfully requests that the Court issue a preliminary injunction enjoining, or at least staying, the arbitration.

ARCHER & GREINER
A Professional Corporation
*Attorneys for Plaintiff,*
*Plantabis Dispensary, LLC*


BY: */s/ Douglas Diaz*
        Douglas Diaz
        Scott A. Sears

DATED:  December 10, 2025

18

PLA093-30002-231403778 v4